FILED
2010 Feb-25  PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

ALABAMA COMMERCIAL MOBILE
RADIO SERVICE EMERGENCY
TELEPHONE SERVICES BOARD,

     PLAINTIFF,

v.                             CASE NO.: CV-10-J-230-NE

TRACFONE WIRELESS, INC.,

     DEFENDANT.

## MEMORANDUM OPINION

This case is before the court on the defendants' notice of removal (doc. 1), and motion to transfer (doc. 2), to which the plaintiff has filed an opposition (doc. 6), and the plaintiff's motion to remand (doc. 4), to which the defendant has filed a response (doc. 9).  Also pending before the court is the defendant's motion to dismiss or, in the alternative, motion for more definite statement (doc. 7).

The plaintiff filed this action in the Circuit Court of Madison County, Alabama, seeking to enforce various provisions of the Alabama Code under which defendant was allegedly required, but failed, to collect an emergency telephone service charge ("CMRS charge") for each prepaid wireless connection in which defendant provides CMRS service. The plaintiff is a seven member board created by the Alabama Legislature for the purpose of administering E-911 service for wireless

communication in Alabama, levying the CMRS charge, establishing and maintaining the CMRS fund, and making disbursements from that fund to Emergency Communications Districts and to CMRS providers.  Complaint, ¶ 1; see also § 11-98-7, Alabama Code 1975, as amended; depo. of James Sasser, submitted as exhibit 4 to plaintiff's motion to remand, at 14.  The Board is charged with collecting money pursuant to a monthly service charge from various wireless carriers and disbursing the money to the Emergency Communications Districts as set forth by statute.  Sasser depo. at 14.

Defendant is a provider of prepaid wireless telecommunications service. Complaint, ¶ 2.  The defendant asserts that the plaintiff has no authority to collect the service charge on prepaid wireless service[1] and has therefore neither collected nor paid the  charge on the prepaid services it sells. Defendant's motion to transfer, at 2; complaint, ¶¶ 25, 34.  The plaintiff alleges that pursuant to its authority to promulgate rules and regulations necessary to effect the provisions of the relevant code section, it enacted Ala.Admin.Code § 225-1-3-.01, which explicitly included "prepaid connections."  Plaintiff's opposition to motion to transfer (doc. 6), at 3.  The plaintiff

---

[1]Defendant's claim in this regard is not unique.  Currently pending in the Circuit Court of Madison County, Alabama, is *T-Mobile South, LLC, and Poertel Memphis, Inc. v. Bonet, et al.,* CV 2008-900128.00, filed on February 8, 2008 (submitted as exhibit 5 to plaintiff's motion to remand).  That action seeks declarations, *inter alia*, that the CMRS Service Charge does not apply to prepaid wireless service and that the Attorney General's opinion otherwise was simply wrong.

states causes of action for declaratory judgment, breach of fiduciary duty, negligence, wantonness, accounting, and permanent injunction.

Defendant filed a notice of removal asserting this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because "diversity of citizenship exists ... and the amount in controversy exceeds $75,000.00 exclusive of interest and costs." Notice of Removal, ¶ 4. The defendant alleges that although the plaintiff is a board created by the Alabama legislature, it is neither immune from suit nor outside the definition of "citizenship" as that term is defined for diversity jurisdiction purposes. Notice of Removal, ¶ 6. Rather, it argues that plaintiff is a "public entity" and hence a citizen of Alabama for purposes of diversity. Defendant's response (doc. 9), at 4. The defendant also filed a motion to transfer (doc. 2), asserting this case properly belongs in the Southern District of Florida, although it concerns solely payment of unpaid CMRS charges, as authorized by the Code of Alabama.[2] In fact, the defendant describes the underlying dispute in this case in its motion to transfer as follows:

Plaintiff ... is charged with levying Commercial Mobile Radio Service

_____

[2] The Hon. Alan S. Gold, United States District Judge in the Southern District of Florida, entered an order in the case before him which clearly questions the appropriateness of venue in Florida. He notes the defendants there "(1) [] are residents of Alabama, (2) [being sued] for policies adopted, implemented and enforced in Alabama, (3) by agents of an Alabama quasi-governmental entity, (4) in connection with the administration of an Alabama fund, (5) created by the Alabama legislature, and (6) governed by Alabama statute." Order Requiring Submission Regarding Venue, *Tracfone Wireless v. Wilson* (Case No. 10-CV-20180-Gold/McAliley), submitted as exhibit 2 to plaintiff's motion to remand.

("CMRS") service charges pursuant to Alabama Code § 11-98-7(b)(1).
The CMRS service charge is an assessment of seventy cents ($0.70) per
month on customers having certain wireless lines of service. *See*
Ala.Code § 11-98-7(b). By its terms, the governing statute, Alabama
Code Section 11-98-6, *et seq*. (the "CMRS Statute"), does not and
cannot apply to prepaid wireless services. Despite this fact, the Board
and its members have taken the position that the CMRS Service Charge
applies to prepaid wireless service, and are attempting to enforce the
CMRS Statute pursuant to their flawed interpretation.

Defendant's motion to transfer, at 1-2.

In its motion to remand, the plaintiff disputes it can properly be sued in any
federal court, be it this one or the Southern District of Florida, because it is an arm
of the State of Alabama. There is no question that "a State is not a 'citizen' for
purposes of the diversity jurisdiction. That proposition has been established at least
since this Court's decision in *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482,
487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894)." *Moor v. Alameda County*, 411 U.S.
693, 717, 93 S.Ct. 1785, 1800 (1973).

A public entity or political subdivision of a State, unless it is simply an
"arm or alter ego" of the State, is, however, a citizen of the State for
diversity purposes. [*Moor,*] 411 U.S. at 717-18. Where the entity is
found to be merely the instrumentality, arm, or alter ego of the state, a
suit against the entity is, in effect, a suit against the state for purposes of
diversity analysis. *Id*. *Likewise, a suit by an entity deemed to be an alter
ego or arm of the state is a suit by the state, rather than a "citizen," for
purposes of determining diversity jurisdiction.*

*Alabama State University v. Baker & Taylor, Inc*., 998 F.Supp. 1313, 1315 (M.D.Ala.

1998)(emphasis added).

Thus, the court first examines the issues raised in the plaintiff's motion to remand. If the plaintiff is correct in its assertion that it is an arm of the State of Alabama, and thus not a citizen for purposes of diversity, then no federal district court, in Alabama, Florida, or elsewhere, may properly exercise jurisdiction. Connected to this issue is the proposition that, should the plaintiff be an arm of the State of Alabama, it is entitled to Eleventh Amendment immunity from suit in federal court. The parties dispute whether the plaintiff is entitled to such immunity. The Supreme Court has commented that:

> The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals.... More pervasively, current Eleventh Amendment jurisprudence emphasizes the integrity retained by each State in our federal system:
>
>> "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity. *See Hans v. Louisiana*, 134 U.S. 1, 13, 10 S.Ct. 504, 506, 33 L.Ed. 842 (1890). It thus accords the States the respect owed them as members of the federation." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993).

*Hess v. Port Authority Trans-Hudson Corp*., 513 U.S. 30, 39-40, 115 S.Ct. 394, 400

(1994).[3] *See also Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n,* 226 F.3d 1226, 1231 (11th Cir.2000)("The Eleventh Amendment grants immunity to the states from suits in federal court.").

The Eleventh Circuit has distinguished the issue of citizenship for purposes of diversity jurisdiction from the issue of Eleventh Amendment immunity, while noting that the Eleventh Amendment immunity analysis is applicable to determinations of citizenship for the purpose of diversity jurisdiction. *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 412 (11th Cir.1999); *Parks v. Carriere Consol. Sch. Dist.,* 12 F.2d 37, 38 (5th Cir.1926); *Coastal Petroleum Co. v. U.S.S. Agri-Chems.,* 695 F.2d 1314, 1318 (11th Cir.1983) (holding that the analysis to determine whether a Florida Board of Trustees is a "citizen" for the purpose of diversity jurisdiction is the same analysis used to determine whether the entity could invoke Eleventh Amendment immunity).

In examining this question, the court first turns to the statutory creation and authority of the plaintiff. In creating the CMRS Board, the Alabama legislature made

---

[3]Defendant cites to *Hess* for the proposition that the plaintiff is not immune from suit and is deemed a citizen of the State of Alabama for diversity purposes. Notice of removal, ¶ 6. However, *Hess* concerned a bistate compact. The Court readily distinguished bistate entities from the States, noting, "Bistate entities occupy a significantly different position in our federal system than do the States themselves. The States, as separate sovereigns, are the constituent elements of the Union. Bistate entities, in contrast, typically are creations of three discrete sovereigns: two States and the Federal Government." *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 40, 115 S.Ct. 394, 400 (1994).

clear that its entire purpose was to fund the cost of providing wireless E-911 service to the State of Alabama.[4]  *See e.g.*, Ala.Code § 11-98-7(b)(3)a. ("Out of the funds collected by the board...56 percent shall be distributed to ECDs [emergency communications districts] and may be used only for the lease, purchase, or maintenance of wireless enhanced emergency telephone equipment..."); and Ala.Code § 11-98-7(b)(3)c. ("Twenty percent shall be deposited into a bank account and shall be used solely for the purpose of payment of the actual costs incurred by CMRS providers in complying with the wireless E-911 service requirements established by the FCC Order...").

More than one hundred years ago, the Alabama Supreme Court eloquently noted that the power of a state to create a body as its agent to carry on specific work for the benefit of the public could not be doubted.  The Court held:

> And where this power is exercised, the institution thus established is in every sense a State institution, and belongs to the State, although managed and its affairs administered under the supervision of trustees of the body corporate created for that purpose.... And where (the corporations) are created, who has the property interest in these institutions? Clearly the State. In the exercise of its right of sovereignty it established them for public purposes; it donates the property or the funds to purchase it upon which they are built, supplies the means by

---

[4]E911 service is "a telephone exchange communications service whereby a public safety answering point (PSAP) designated by the customer may receive telephone calls dialed to the telephone number 911"; that service "includes lines, facilities, and equipment necessary for answering, transferring, and dispatching public emergency telephone calls originated by persons within the serving area who dial 911." Ala.Code § 11-98-1(3).

which they are maintained and operated. They have no capital stock, or shares held by individuals. Indeed, they have no membership or stockholders. They are not created for profit, but solely as public benefactors, the beneficiaries being the people who compose the State.

*White v. Alabama Insane Hospital*, 138 Ala. 479, 482, 35 So. 454, 454 (1903).

Drawing on this history, the Alabama Supreme Court, almost eighty years later, devised a test for whether a suit qualifies as a suit involving the state, holding that courts should consider (1) the character of power delegated to the body; (2) the relation of the body to the state; and (3) the nature of the function performed by the body.[5] *Armory Commission of Alabama v. Staudt,* 388 So.2d 991, 993 (Ala.1980). See also *Ex parte Alabama Dept. of Human Resources,* 999 So.2d 891, 896 -897 (Ala.2008).

Considering the first of these factors from *Armory*, the court finds that the CMRS Board was given the power to levy a statewide service charge on each user of wireless connections "that has a place of primary use within the geographical

---

[5]The defendant argues that the *Armory* test is "simply not applicable for determining the Plaintiff's status."  Defendant's response (doc. 9), at 7.  The court finds that how a state defines its own agencies, boards and commissions is very relevant to a determination of whether a particular Board is indeed an arm of that state.  Additionally, the court finds little substantive difference between the test from Armory and that set forth by the Eleventh Circuit.  *See Miccosukee Tribe of Indians*, 226 F.3d at 1231 ("this court examines the following factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity").

boundaries of the State of Alabama."  Ala.Code § 11-98-7(b)(1).  Board members serve without compensation, but are entitled to reimbursement for "actual expenses and travel costs associated with their service."  Ala.Code § 11-98-7(d).

Demonstrating the relation of the body to the state as well as the nature of the function performed by the body is the legislative proscription that only the state legislature can change the amount of this charge.  Ala.Code § 11-98-7(b)(1).  The legislature further mandated that an annual audit shall be conducted by the Department of Public Examiners of all expenditures of the board from all CMRS service charges from the CMRS fund.  Ala.Code § 11-98-7(b)(4).  While further requiring the CMRS Board to retain an independent, third-party auditor, such audit is required to be conducted "pursuant to Chapter 2A of Title 40."  Ala.Code § 11-98-7(b)(5).

Most telling of these factors is the nature of the function performed by the Board, which is solely to promote the health and safety of the citizens of Alabama by shortening the time required for a citizen to request and receive emergency aid.[6]

_____

[6]Although not wholly relevant to the issue before this court, at least one federal district court in Alabama has found that, concerning the ECDs:

Indeed, under Alabama law, the E-911 Department is a state department. See 1975 Ala.Code § 11-98-2; *Hutchinson v. Choctaw County Emergency Communication District,* 906 So.2d 933, 937 (Ala.Civ.App.2004) (observing that all emergency communication districts are political and legal subdivisions of the State).

Ala.Code § 11-98-3.  The CMRS Board's creation, composition and duties are set forth in the Emergency Telephone Services Act ("ETSA").  The Act sets forth both that the telephone number 911 is restricted to emergency calls and that making of false alarms or knowingly reporting false information through the 911 system may subject the caller to "penalties as provided by law."  Ala.Code § 11-98-10 (a) and (d). "The legislature's purpose in enacting the Emergency Telephone Service Act was to shorten the time between a request for, and the receipt of, emergency aid and to provide for the funding of a three-digit emergency number."  *Hoover Telecommunications Dist. v. BellSouth Telecommunications, Inc.*, 712 So.2d 1095, 1098 (Ala.Civ.App.1997).

Applying the above factors and considerations, the court is persuaded that the plaintiff here is an arm of the state.  Five of the Board members are appointed by the Governor and confirmed by the Senate, one member is appointed by the Speaker of the House, and the final member is appointed by the Lieutenant Governor.  Ala.Code § 11-98-7(a)(5).  *See Miccosukee Tribe of Indians,* 226 F.3d at 1232-1233 (stating "other factors support the conclusion that the state controls the Florida Commission. The Governor and the State Senate select the Commission's members....State authority over the appointment of agency members lends support to finding that the

---

*Johnson v. Chilton County Commission*, 2009 WL 2323846, 3 (M.D.Ala.2009).

10

agency is an arm of the state for Eleventh Amendment purposes.").

The CMRS Board exists to serve as a collector and distributor of a state mandated charge on each CMRS connection in Alabama so that all residents of Alabama may have access to wireless 911 emergency service.  Rather than a business venture, the sole purpose of establishing 911 emergency service is for the public health and welfare, a classic area of state regulation.  "They are not created for profit, but solely as public benefactors, the beneficiaries being the people who compose the State."  *White*, 138 Ala. at 482, 35 So. at 454.  In *White*, the Court considered that

> Should the state, through its legislative department, see fit to repeal the act of incorporation and provide some other or different agency or trustee to manage and control such an institution, where is the obstacle in its doing so? It would clearly violate no contractual obligation, or otherwise infringe upon the property rights of any person, for no individual has any personal pecuniary interest in the incorporation as such; therefore no right to complain of its destruction. Not even the trustees appointed under the act incorporating the defendant would be pecuniarily affected by a repeal of its charter. No compensation is allowed them for the services they are to render, and they otherwise have no special pecuniary interest either in the continued existence of the corporate entity they represent, or its welfare as a going concern.

*White*, 35 So. at 454.  The court finds all of the above considerations applicable here.

Further supporting the court's finding that the plaintiff is an arm of the state is Ala.Code § 11-98-7(g), which states that the CMRS board "shall be subject to the Alabama Sunset Law under Chapter 20 of Title 41, shall be classified as an

enumerated agency under Section 41-20-3, and shall terminate on October 1, 2000, and every four years thereafter, unless continued as therein provided."  Ala.Code § 11-98-7.  An "enumerated agency" is defined as "All departments, councils, boards, commissions, divisions, bureaus or like governmental units or subunits of the State of Alabama, which are enumerated herein."  Ala.Code § 41-20-2(1).  The Board was most recently continued by Alabama Acts 2008, No. 08-146.  Should the CMRS Board not be continued, "[t]he state Comptroller is authorized to draw warrants on the State Treasury for any outstanding accounts which are legally owed but unsettled by any agency which has ceased functioning pursuant to this chapter.  Such claims must be presented and paid in the same manner as required by law for any claims for the payment of state funds."  Ala.Code § 41-20-14(b).  Therefore, the State of Alabama retains the ultimate liability for the debts of the CMRS Board.

Although the defendant argues that the Board is self-funded, and thus within the gambit of *Hess, supra*, the court finds the above code sections to be a clear statement of intent that the CMRS Board is an arm of the State -- should the State of Alabama decide to eliminate the Board, the State will be liable for outstanding monetary obligations of the Board.  Additionally, the Board's counsel was authorized by and seemingly will be paid by the State of Alabama through the Office of the Governor.  *See* plaintiff's exhibit 3 to motion to remand.

12

In *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals*, 695 F.2d 1314 (11th Cir.1983), the Court considered whether a Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, later merged into the Department of Natural Resources, was part of the State for purposes of diversity, or whether it was a separate and independent agency. *Id*., at 1317.  The Court acknowledged that the district court had used a multi-factor analysis, stating:

> These factors have been approved by this circuit and are as follows: (1) whether the agency can be sued in its own name; (2) whether the agency can implead and be impleaded in any competent court; (3) whether the agency can contract in its own name; (4) whether the agency can acquire, hold title to, and dispose of property in its own name; and (5) whether the agency can be considered a "body corporate" having the rights, powers and immunities incident to corporations. *See C.H. Leavall and Co. v. Board of Commissions of Port of New Orleans*, 424 F.2d 764 (5th Cir.1970); *Central Stikst of Verkoopkantor, N.V. v. Alabama State Docks Department*, 415 F.2d 452 (5th Cir.1969).

*Id*., 695 F.2d at 1318.  The court finds further support for its conclusion that the plaintiff here is not a citizen for purposes of diversity jurisdiction by applying these five factors.[7]

---

[7]The defendant lists yet another test for whether an entity is an arm of the State, set forth by the Eleventh Circuit in *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir.2003).  That case provides a four part test, as follows (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments.  *Id*.  As that case focused on an Eleventh Amendment immunity question in the context of a claim pursuant to 42 U.S.C. § 1983, the court has placed less emphasis on the *Manders* case than on *Coastal Petroleum*.  Unlike the posture of this case, the existence of diversity jurisdiction was not an issue in *Manders*.  However, even under the *Manders* factors, this court would conclude that the Board is an arm of the state, as it is clearly

Although the Board is entitled to hold and dispose of funds held by it, the same is in a manner so carefully prescribed that the Board is merely a conduit for the collection and redistribution of these funds.  Nothing in the authorizing statute gives the Board the ability to be sued, contract, or engage in the activities of corporations.  Rather, the Board's authority is that set forth by statute, no more and no less.  Like other arms of the state, the Board's authority includes promulgating rules and regulations necessary to effectuate the provisions of the relevant statute.  Ala.Code § 11-98-7(b)(7).

Defendant seizes on the fact that the CMRS Board derives its funds directly from charges imposed on wireless connections and not from the Alabama State treasury as proof that the Board is not an "arm of the state."  See defendant's response (doc. 9), at 7.  However, the Eleventh Circuit has previously considered the identical argument, and rejected it.  In *Miccosukee Tribe of Indians*, the Court stated:

> The Tribe also contends that the Florida Commission is fiscally independent because it does not rely upon state funds to support its operations. Instead, the Commission raises its own funds to pay its expenses. See Fla. Stat. § 548.077. Even though the Commission may collect money to pay for its own expenses, the Commission is still an arm of the state because the state controls its fiscal life. In *Fouche*, this court held that although the Park Authority raised its own money and

---

defined as such by state law and the state maintains complete control over the Board.  While the Board derives its funds from the $.70 per month charge as defined by state statute, the state remains ultimately liable for monies owed by the Board.

14

was self-sufficient, the state controlled the Park's fiscal life because the Park had to submit its budget and annual reports to the legislature. See 713 F.2d at 1520-21; see also *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.1985) ("Where the budget of an entity is submitted to the state for approval, this suggests that the entity is an agency of the state."). Similarly, the Florida legislature controls the Florida Commission's fiscal life. The Florida legislature appropriates the funds to carry out the Commission's functions. See Fla. Stat. § 455.219(4). Additionally, the DPR submits to the legislature an annual report on the Commission which includes a breakdown of the Commission's revenue and expenses and a condensed version of the Commission's long-range plan.

*Miccosukee Tribe of Indians,* 226 F.3d at 1233.

Even more telling is defendant's own complaint, filed in the Southern District of Florida. In it, defendant complains that "[a]lthough several states have enacted laws to allow for collection of E911 surcharges from prepaid wireless customers by retailers at the point-of-sale, Alabama has not enacted such a law, and the Board has not attempted to authorize point-of-sale collection." *See Tracfone Wireless, Inc. v. Wilson, et al.*, submitted as exhibit 1 to plaintiff's motion to remand, ¶ 30. The defendant then turns to the Alabama Code to set forth how and where the Board may collect the surcharge, *see id.*, ¶¶ 31-33, before distinguishing defendant's prepaid service as something separate and apart from the statutory authority of the CMRS Board. *Id.*, ¶ 34. In other words, the defendant here is arguing in its own case, filed in Florida, that the plaintiff here is powerless to act beyond its statutory grant of authority.

15

Because the court finds that the plaintiff is not a citizen of the State of Alabama for purposes of diversity jurisdiction, the court must make the parallel finding that it lacks jurisdiction over the parties' dispute.  For this same reason, the court does not reach the plaintiff's arguments concerning the Johnson Act.

Having found that jurisdiction is lacking in any United States District Court, the court is of the opinion that the defendant's motion to transfer to the United States District Court for the Southern District of Florida must be denied and this case remanded to the Circuit Court of Madison County, Alabama.  The court shall so rule by separate Order.

Plaintiff's request for costs and attorney's fees, contained within its motion to remand, shall be denied by separate order.

The court leaves pending the defendant's motion to dismiss or for more definite statement for consideration after remand by the Circuit Court of Madison County.

**DONE** and **ORDERED** this the 25th  day of February, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE